O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANNETTE MILLS, | Case No. CV 07-05055 DDP (CTx) |
| Plaintiff, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |
| LYNWOOD UNIFIED SCHOOL DISTRICT, RACHEL CHAVEZ, MARTINA RODRIGUEZ, MARIA LOPEZ, JOSE LUIS SOLACHE, ALFONSO MORALES, GUADALUPE RODRIGUEZ, DHYAN LAL, ROBERTO CASAS, DIANE LUCAS; ANIM MENER, MALCOLM BUTLER, | [Motion filed on May 13, 2009] |
| Defendants. | |

**I. BACKGROUND**

Plaintiff Annette Mills, who is African American and over 40 years of age, has been a teacher working for Defendant Lynwood Unified School District since 1994. (Mills Decl. ¶ 4.) Before the events at issue starting in Fall 2005, Plaintiff had never received a negative employment review or been disciplined and, to the contrary, had received numerous distinguished service teaching awards over her career, including in 1982, 1983, 1985, 1986, 1992, 1995, 1997, 2003, and 2007. (Johnson Decl. Ex. 11.)

In Fall 2005, Plaintiff was working at Lynwood Middle School ("LMS"), when Defendant Anim Mener became principal of the school. (Id. ¶ 4.) In the summer before school started in 2005, Plaintiff was diagnosed with sciatica, a nerve condition that results in pain, muscular weakness, and difficulty for Plaintiff in moving her legs. (Mills Decl. ¶ 5.) However, Plaintiff does not consider herself presently disabled, and her back condition comes and goes. (Statement of Uncontroverted Facts ("SUF") ¶¶ 2-3.)

When she returned to work in September 2005, a few days after the school year had begun, Plaintiff informed Mener of her sciatica and requested that she be able to drive to the front office, sign-in, and then drive to the rear of the campus where her classroom was located to park. Plaintiff explained that the request was based on her sciatica and resulting pain. (Mills Decl. ¶ 10.) Mener initially agreed to permit Plaintiff to do this, but later became uncooperative. (Mills Decl. ¶ 7.) Plaintiff states that Mener or the head of security would intentionally park in the only available parking space at sign-in time, and Plaintiff would then not have a location to park. (Id. ¶ 7.) As a result, Plaintiff says she was often late to work. (Id.) Plaintiff also states that Mener would remove the sign-in sheet before 8am, the required sign-in time, to make her appear late (when, in fact, she was not). (Id. ¶ 8.) At some time in 2006, Plaintiff also requested help from Mener and her assistant to carry testing material to the classroom, but was ignored by them. (Id. ¶ 10.)

Plaintiff also states that Mener treated African American employees of the school differently. For example, Plaintiff states that Mener had security follow her around and gave her "incessant

2

memos" on a "daily basis," which was not done to younger and non-African-American employees. (Id. ¶ 9.) Plaintiff also alleges that on May 2, 2006, there was an award ceremony at the school where older, African-American teachers did not receive "legitimate" certificates of appreciation signed by the Superintendent, and instead received "generic" certificates. (Id. ¶ 11.)

Regarding Plaintiff's overall performance in 2005-06, Defendants provide that Plaintiff was late to work 15 times, though the parties dispute why, as described above. During Fall 2005, Plaintiff also failed to attend five staff meetings, two "college" meetings, and two department meetings. (SUF ¶¶ 15-17.)

On March 22, 2006, the District notified Plaintiff that she would be transferred for the 2006-07 school year and, on June 1, 2006, Plaintiff was transferred to Cesar Chavez Middle School ("CCMS"). (SUF ¶ 19.) CCMS and LMS are 1.77 miles apart, and Plaintiff's base pay, hours, classification, and benefits did not change. (SUF ¶¶ 20-24.) However, Plaintiff states that at CMS she had to "team teach" with another teacher, requiring her to teach twice the number of students in cramped quarters; and that she did not have adequate materials or supplies. (Mills Decl. ¶ 14.) Plaintiff also lost the opportunity to work on weekends for pay at LMS, to work in LMS' "Summer Bridge Program," and the opportunity to substitute teach during the summer. (Id. ¶ 15.) Plaintiff also was part of two specialized programs at LMS ("Curriculum and Development" and "Backward Design") that did not exist at CCMS. (Id.)

3

Plaintiff filed suit on August 2, 2007 and, in her Second Amended Complaint ("SAC"), brings the following claims against the District:

> 1) failure to accommodate her disability in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov. Code § 12940(a);
> 2) disability discrimination in violation of FEHA § 12940(h);
> 3) discrimination based on retaliation in violation of FEHA § 12940(a);
> 4) race discrimination in violation of FEHA § 12940(a);
> 5) age discrimination in violation of FEHA § 12940(h);
> 6) failure to prevent harassment in violation of FEHA § 12940(k);
> 7) racial discrimination in violation of Title VII, 42 U.S.C. § 2000e, et seq.;
> 8) retaliation in violation of Title VII; and
> 9) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.

(SAC 5-15.) Plaintiff also brings a claim for failure to prevent harassment under FEHA against Defendant Mener. Defendants now move for summary judgment on all of Plaintiff's claims.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. However, no genuine issue of fact exists "[w]here the

record taken as a whole could not lead a rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A. Age Discrimination - FEHA and ADEA

The plaintiff's prima facie burden is not "onerous," but the plaintiff must at least show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on [age]." <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal.4th 317, 355 (Cal. 2000). In order to present a prima facie case under FEHA, Plaintiff must show that she is: 1) over 40 years of age; 2) performing competently in his or her position; 3) suffered an adverse employment action; and 4) replaced in her position by a significantly younger person. <u>See</u> <u>Hersant</u>, 57 Cal. App. 4th at 1002-03. As relevant here, ADEA also requires that the Plaintiff be replaced by a younger worker. <u>Pottenger v. Potlatch Corp.</u>, 329 F.3d 740, 745–46 (9th Cir. 2003).

Plaintiff concedes that she has no evidence to demonstrate that she was replaced in her position by a significantly younger person. Accordingly, these claims fail as a matter of law.

### B. Race Discrimination - FEHA and Title VII

FEHA and Title VII use the <u>McDonnell Douglas</u> "three-stage burden-shifting test." <u>Guz v. Bechtel National, Inc.</u>, 24 Cal. 4th 317, 354 (Cal. 2000). Plaintiff must first establish a prima facie case of discrimination, which the employer may then rebut with evidence of a legitimate, nondiscriminatory rationale. <u>Id.</u> at 355-56. If the employer satisfies this burden, the plaintiff must prove that the employer's reasons are pretextual. <u>Id.</u>

5

Accordingly, the plaintiff must provide evidence showing that the employer's intent or motive was discriminatory; and the ultimate burden of persuasion remains with the Plaintiff. Id. at 356, 383. However, where a defendant moves for summary judgment, as here, the framework is altered slightly. Defendants have the initial burden of proving either that Plaintiff has not established an element of her FEHA claim, or that Defendants have a legitimate, nondiscriminatory rationale for any adverse employment action. Avila v. Continental Airlines, Inc., 165 Cal. App. 4th 1237, 1247 (Cal. Ct. App. 2008)(citing Kelly v. Stamps.com Inc., 135 Cal. App. 4th 1088, 1098 (Cal. Ct. App. 2005)).

### 1. Prima Facie Case

In order to present a prima facie case under FEHA, Plaintiff must show that she is: 1) a member of a protected class; 2) performing competently in the position she held; 3) suffered an adverse employment action; and 4) that "some other circumstance suggests discriminatory motive." Kelly, 135 Cal. App. 4th at 1098 (citing Guz, 24 Cal. 4th 317).

Defendants argue that Plaintiff does not present a prima facie case because she did not suffer an adverse employment action. An adverse employment action must materially affect Plaintiff's "terms, conditions, or privileges of employment." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1054-55 (Cal. 2005). The Court finds that Plaintiff has raised a genuine issue on this matter. Although her base compensation and benefits did not change, a number of other characteristics of her position did change in ways that are plausibly material. Plaintiff was required to "team teach" with another teacher, requiring her to teach twice

6

the number of students in cramped quarters, and where she did not have adequate materials or supplies. (Mills Decl. ¶ 14.) Plaintiff also lost the opportunity to work on weekends for pay, to work in the "Summer Bridge Program," as well as the opportunity to substitute teach during the summer. (Id. ¶ 15.) Plaintiff also was part of two specialized programs at LMS ("Curriculum and Development" and "Backward Design"), that did not exist at Cesar Chavez Middle School. (Id.)

Accordingly, the Court finds a genuine issue of material fact as to whether Plaintiff suffered an adverse employment action.

### 2. Legitimate Business Rationale and Pretext

Defendants next argue that there was a legitimate business reason to transfer Plaintiff. A legitimate business rationale must be "facially unrelated to [the] prohibited bias." Guz, 24 Cal.4th at 358. Defendants argue that Plaintiff was transferred because she was not performing competently. In support of this assertion, Defendants provide that Plaintiff was late to work 15 times. During Fall 2005, Plaintiff also failed to attend five staff meetings, two "college" meetings, and two department meetings. (SUF ¶¶ 15-17.) Accordingly, Defendant has satisfied its burden to "articulate" a legitimate, non-discriminatory reason. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002).

The burden then shifts to Plaintiff to raise a genuine issue as to pretext regarding Defendants' charge of incompetence, based on race. Plaintiff does not deny that she missed the above meetings or was late to school. However, Defendants also do not refute any of the evidence in Plaintiff's declaration. Defendants

7

do not dispute that Plaintiff gave her "incessant memos" on a "daily basis," which was not done to younger and non-African-American employees. (Mills Decl. ¶ 9.) Defendants do not dispute that at an awards ceremony in May 2006 Mener presented older, African-American teachers with generic certificates of appreciation, while giving younger, non-African-American teachers legitimate certificates signed by the District superintendent. (SGI ¶ 34.) Defendants do not dispute that Mener would not verbally communicate with Plaintiff or other older, African-American employees at LMS, but would readily associate with and greet other younger, non-African-American employees. (Mills Decl. ¶ 9.) Defendants also do not dispute that Mener directed security guards to follow Plaintiff around and sit outside her classroom on a daily basis, which was not done to younger, non-African-American employees. (Id.)

Instead, Defendants argue that Plaintiff's declaration is her only evidence, that it is "uncorroborated and self-serving," and therefore this cannot raise a genuine issue of material fact. Villiarimo, 281 F.3d at 1061. This is inaccurate. Plaintiff provides a large number of teaching awards, which demonstrate that she has consistently been recognized for superior performance over the last twenty-five years. (See Johnson Decl. Ex. 11.) This extensive history of teaching awards also contradicts Defendants' articulated rationale for her transfer. Even assuming that Plaintiff did miss a number of meetings or was late to meetings, it is reasonable to infer that these errors were not sufficient to rise to actual incompetence, in light of Plaintiff's superior, previous performance.

1  Furthermore, viewed in the context of Plaintiff's declaration
2 and her prior job performance, the Court also considers Plaintiff's
3 provision of statistics to be relevant.  See <u>American Federation of
4 State, County, and Mun. Employees, AFL-CIO (AFSCME) v. State of
5 Wash.</u>, 770 F.2d 1401, 1407 (9th Cir. 1985)("The weight to be
6 accorded . . . statistics is determined by the existence of
7 independent corroborative evidence of discrimination.").  These
8 statistics demonstrate that the number of African American
9 administrators and teachers fell significantly within the District
10 from 2001-2008.  (SGI ¶¶ 14-15.)  The total percentage of
11 administrators decreased by 28.7%, while the total percentage of
12 certificated staff decreased by 6%.  (<u>Id.</u>)  While it is certainly
13 arguable whether this decrease is meaningful, this merely goes to
14 the weight of the evidence, and does not remove the inference of
15 discrimination within the above context.
16  In sum, the Court finds that Plaintiff has raised a genuine
17 issue of material fact as to racial discrimination, in violation of
18 FEHA and Title VII.
19  C.   <u>Failure to Prevent Harassment</u>
20  Plaintiff's SAC does not provide a basis for her harassment
21 and instead alleges harassment by Mener generally.  (<u>See</u> SAC
22 Harassment must be based on a protected category, such as sex or
23 race.  <u>See, e.g.</u>, <u>Fisher v. San Pedro Peninsula Hosp.</u>, 214 Cal.
24 App. 3d 590, 608 (Cal. Ct. App. 1989).
25  Defendants argue that Plaintiff has not demonstrated grounds
26 for her harassment.  In response, Plaintiff points to no evidence
27 in support of her claim.
28

9

Therefore, there is no genuine issue of material fact and Plaintiff's claim for failure to prevent harassment fails, because Plaintiff has not demonstrated harassment. Trujillo v. North County Transit Dist., 63 Cal. App. 4th 280, 289 (Cal. Ct. App. 1998).

### D. Retaliation

A plaintiff establishes prima facie case of retaliation by demonstrating: 1) she engaged in protected activity; 2) that afterwards her employer subjected her to an adverse employment action; and 3) a causal link between the two. Morgan v. Regents of University of California, 88 Cal. App. 4th 52, 69 (Cal. Ct. App. 2001). Defendant may rebut the prima facie case by presenting a legitimate business rationale, which the plaintiff may then overcome by showing the employer's rationale is pretext for retaliation. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066 (9th Cir. 2003).

As described above, Plaintiff has raised a genuine issue of material fact as to whether she suffered an adverse employment action. Defendants have also articulated a legitimate business rationale - incompetence by Plaintiff. While Plaintiff does rebut Defendants' argument as it applies to discrimination, Plaintiff does not argue or present evidence to rebut Defendants' legitimate business rationale as it applies to retaliation for protected activity. In other words, Plaintiff fails to point the Court to any evidence which demonstrates that Defendants' rationale was a pretext for retaliation.

Therefore, as there is no dispute of material fact, the Court finds that Plaintiff's claim for retaliation fails as a matter of law.

E.  <u>Disability Discrimination and Failure to Accommodate under FEHA</u>

1.  <u>Disability Discrimination</u>

Disability discrimination under FEHA is analyzed under the same three-stage burden-shifting test as other protected categories. <u>Scotch v. Art Institute of California</u>, 173 Cal. App. 4th 986, 1004 (Cal. Ct. App. 2009).

Defendants do not dispute that Plaintiff was disabled during the time period at issue[1] and, as described above, the Court finds that there is a genuine issue as to whether Plaintiff suffered an adverse employment action.  Again, Defendants legitimate rationale for transferring Plaintiff is her incompetent performance. Accordingly, the burden shifts to Plaintiff to show pretext. However, as with Plaintiff's claims regarding race discrimination, Defendants do not refute any of the allegations of Plaintiff's declaration related to her disability.  Defendants do not dispute that Plaintiff asked to park in the visitors spot in the mornings to sign-in, and that Mener or the head of security would park in this spot so that Plaintiff could not sign in on time.  (Mills Decl. ¶ 7.)  Defendants do not dispute that Mener would smirk at her from her parked car in the visitors spot to taunt Plaintiff. (<u>Id.</u>)  Defendants do not dispute that Mener would routinely remove the sign-in sheet from the front office before 8am, so that it would appear that Plaintiff was late when she was not.  (<u>Id.</u> ¶ 8.) Defendants also do not dispute that Mener and her assistant refused

---

[1] However, Plaintiff has conceded that she does not consider herself to be disabled (SUF ¶ 2) and instead has an "on-and-off back problem."  (Garcia Decl. Ex. 2 Mills Depo. 163:8-10.)

11

to provide help her during testing in 2006 with carrying materials, because she was incapable of carrying them due to her back condition. (Id. ¶ 10; Garcia Reply Decl. Ex. 15 126-27.) Furthermore, the Court again finds that an inference of pretext is supported by the undisputed evidence of Plaintiff's extensive history of superior performance as a teacher.

Therefore, the Court finds there is a genuine issue of material fact as to whether Plaintiff was discriminated against on the basis of her disability.

### 2. Failure to Accommodate

The elements of a failure to accommodate claim are that: (1) the plaintiff has a disability under the FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably accommodate the plaintiff's disability. Scotch, 173 Cal. App. 4th at 1010.

Defendants first argue that Plaintiff's requested accommodation was unreasonable. A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." Scotch, 173 Cal. App. 4th at 1010. Plaintiff's three requested accommodations were that Defendants (1) permit her to sign in late, (2) to park in the visitors spot before signing in, and (3) during testing in 2006, to have help carrying materials. Defendants argue that the first request was unreasonable, because Plaintiff's late sign-in required someone else to supervise her students for her (which is an essential part of her job). While this accommodation may ultimately have been unreasonable,

12

Defendants provide no evidence which suggests that they actually engaged in the interactive process with Plaintiff to discuss this.

Where an employee indicates disability to his employer and requests a reasonable accommodation, FEHA requires the parties to engage in the "interactive process." See also Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (Cal. Ct. App. 2000)(on a motion for summary judgment on a FEHA reasonable accommodation claim, the employer must prove that it "did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith"). The interactive process "imposes burdens on both the employer and employee." Although "the employee must initiate the process," the burden is also placed on the employer once it "becomes aware of the need to consider an accommodation." Scotch, 173 Cal. App. 4th at 1014 (internal quotation omitted). However, once the "interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous"; and the employer and employee together "must participate in good faith, undertake reasonable efforts to communicate its concerns, and make available to the other information which is available, or more accessible, to one party." Id. The court's determination of liability then "hinges on the objective circumstances surrounding the parties' breakdown in communication, and responsibility for the breakdown lies with the party who fails to participate in good faith." Id. (internal quotation omitted).

In this case, Plaintiff has raised a genuine issue regarding Defendants' failure to engage in the interactive process, because

13

Defendants fail to present any evidence that they actually communicated their disagreement with Plaintiff's requested accommodation or requested a substitute accommodation.

Therefore, the Court finds that there is a genuine issue of material fact as to whether Defendants failed to accommodate Plaintiff's disability.

## IV.  CONCLUSION

For the above reasons, Defendants' motion for summary judgment is GRANTED as to all claims except Plaintiff's claims for failure to accommodate her disability, and for race and disability discrimination.  As no claims remain against Mener, she is DISMISSED as a defendant in this action.

IT IS SO ORDERED.

Dated: August 6, 2009

DEAN D. PREGERSON
United States District Judge